EDWARD SANFORD

v.

WILLIAM M. MILLER.

1. PRIVATE ENTRY BOOK.—In a suit against appellant by appellee to recover money claimed to have been paid to appellant's son, appellee introduced in evidence his cash book, which contained an entry of moneys paid out by him, and such book was taken by the jury to the jury room. Held, that the book was not admissible in evidence. It was not a book of account between the parties.

2. AGENCY—DECLARATIONS.—When the acts of the agent will bind the principal, his declarations and admissions respecting the subject-matter

will also bind the principal, if made at the same time and constituting a part of the *res gestæ.*

3. INSTRUCTIONS.—The instructions in this case are erroneous in ignoring the question of the son's authority to receive the money.

APPEAL from the Circuit Court of Grundy county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed June 14, 1886.

Messrs. BULL, STRAWN & RUGER, for appellant; as to agent's declarations, cited Lindblom v. Ramsey, 75 Ill. 246; Reynolds v. Ferree, 86 Ill. 570.

Messrs. JORDAN & WING, for appellee.

WELCH, J. This is an action, brought by the appellee against the appellant, to recover two hundred dollars and interest thereon, which the appellee claims that he paid to the son of the appellant in April, 1881. Appellee had, through the appellant, procured a loan of the sum of $5,000, from the Equitable Trust Company, of Connecticut, in November, 1877, for which sum the appellee executed his note with coupon interest notes, together with trust deed on his land, to the Equitable Trust Company. The note, coupons and trust deed were all forwarded by the appellant to the trust company. Appellee had paid through the appellant the coupon interest notes to the Equitable Trust Company up to November, 1880, and this controversy arises out of the interest due May 1, 1881, for the sum of $200. On the 1st of November, 1882, appellee paid to the appellant the interest coupon due May 1, 1881, with interest thereon; said payment was made under protest and claim that he had paid the same to the son of the appellant, for him, as the agent of the Equitable Trust Company, on or about the 28th of April, 1881, and this suit is for the recovery of the sum thus claimed to have been paid. There is no pretense on the part of the appellee that this payment was made to the appellant in person. The appellee, to successfully maintain his rights to recover this money from the appellant, was required to have

shown by a preponderance of the evidence two propositions. First. That he made the payment of the money to the son of the appellant. Second. That the son was the agent, general or special, of the appellant, to receive the money for him. The appellee, as to the payment, states that it was made by him to the son. The son denies the payment to him. On the trial the appellee recovered a verdict for the sum of $259.44 against the appellant. Motion for new trial. Motion overruled and judgment on the verdict, from which this appeal is taken. Various errors are assigned as to the admission of improper evidence on the part of the appellee, and the rejection of proper evidence offered on behalf of the appellant. Also as to the giving of improper instructions for the appellee, and the refusal to give proper instructions for the appellant. We shall not undertake to examine the various exceptions taken as to the admissibility of the evidence in the order in which they were made. The evidence shows that in the latter part of October, 1881, the father of the appellee left the amount due for November interest, 1881, with the appellant to send to the company, which he sent as directed, and received a letter on the 7th of November, 1881, from the company, stating that the interest had not been paid for May. Appellant thereupon wrote a letter to the appellee to call at his office. About November 12th appellant met appellee and told him that the company had written that his May interest had not been paid. Appellee said, " I told him I thought I paid it to him; he said no, that I did not pay it to him. I said, 'I guess I must have paid it to Herman.' He said I could not have paid it to Herman, because Herman was not in the office at that time. I told him that I would have to think the matter over and look at my book, where I was in the habit of making my entries." About a week afterward appellee stated that he came to the conclusion that he had paid it to the son of appellant, from examining his cash books. He says in regard to this book, it runs from the time he commenced doing business on the farm, and it contains an entry on page 27, dated April 27, 1878: "Paid interest and exchange account; interest from Equitable Life and Trust

Sanford v. Miller.

Company, $200; don't recollect to whom the money was paid, think it was defendant." Next entry is on page 49, dated October 29, 1878 : " Interest and exchange account of interest on equitable loan, $200." Thinks this was paid to the defendant. "I can not tell from my book to whom or when I made May payment of 1879; it is under date of April 27, 1879 ; have no recollections as to whom I paid any of the payments of May, 1878, November, 1878, May, 1879, or who was present at either time, nor who was in the defendant's office when the money was paid." "I know that the defendant did not have the coupons when the money was paid ; I will not swear there was a single occasion when I paid interest into the office when the defendant was not present; before that time I claim I paid his son." This payment is of date April 28, 1881, on page 101 : " Interest and exchange account Equitable Loan and Trust Company, $200." This book was allowed to go to and be taken by the jury to their jury room with them, which was objected to, and exception taken by the appellant. We know of no rule of law under which this book could go to the jury as an account book, and if not competent to go to the jury it was improper to be taken by them to their room. It was not a book of account between the parties. There is no account with the appellant in the book, or any reference to him in it. This book is not an account book, such as is admissible in evidence either at common law or under our statute, our statute not changing the character of a book, but changing the character of evidence necessary to its admission. It should not have been admitted in evidence. It is further insisted by counsel for the appellant that the court erred in allowing the appellee to testify as to a conversation had with the son of the appellant, to whom the money is claimed to have been paid by the appellee, some seven months after the money is claimed to have been paid, the conversation not being in the presence of the appellant. "It is a general rule that when the acts of the agent will bind the principal, then his declarations and admissions respecting the subject-matter will also bind the principal, if made at the same time and constituting a part of the *res gestœ*. Story on

Agency, paragraphs 134–137; Greenleaf's Ev., Vol. 1, paragraph 113; Linbloom v. Ramsey, 75 Ill. 246; Reynolds v. Ferree, 86 Ill. 570.   It is further insisted by counsel for appellant that the court erred in permitting the written notice given by the appellee, that the money was paid under protest, to go to the jury.   This was error; appellee should not have been allowed to supplement his evidence by this written notice.   It is also insisted that the court erred in giving the 4th, 6th, 7th and 8th of the instructions asked by the appellee.

"4th.   The court instructs the jury that if from the evidence in the case they believe that the plaintiff, W. M. Miller, entered in his book every other payment of interest made to E. Sanford, except the one in dispute, and that there is no dispute as to the correctness of every other entry, save and except the entry of the payment under date of April 28, 1881, then and that in case it is for the jury to determine from all the evidence as to whether the plaintiff mistakenly or falsely made the entry, under date of April 28, 1881, or whether such entry was made in truth and in fact, and is a true record of a payment actually made."

Holding as we have that the book should not have been admitted in evidence, this instruction with the book out, would have no place in the case.

" 6th.   The court instructs the jury, that if you believe from the evidence in this case · that the defendant, E. Sanford, permitted his son, E. H. Sanford, to take charge of his office in the city of Morris, and transact business with the defendant's clients, and that the plaintiff found the defendant's son in charge of the office and paid to him the money in controversy, then in law it is the same as if he paid the defendant himself."

This instruction is in conflict with the rule announced by the Supreme Court in Reynolds v. Ferree, referred to *supra*, and should not have been given.

" 7th.   The court instructs the jury that if they find from a preponderance of the evidence in this case that on or near the 28th day of April, 1881, the plaintiff, William Miller, handed E. H. Sanford, son of the defendant, two hundred dollars in money, and that such sum was received by said E.

Sanford v. Miller.

H. Sanford for his father, the defendant, and that said son was agent of his father in receiving such money, and that the same was to apply on interest due, or soon to fall due, upon a loan in favor of the Equitable Trust Company, and that no application was made of said money upon said loan, and that later the plaintiff, William Miller, in order to secure a release of a mortgage given by reason of said loan, he, Miller, paid to the defendant, E. Sanford, two hundred and thirty dollars under protest, then your verdict must be for the plaintiff for such sum of money—two hundred and thirty dollars—with interest thereon at six per cent. per annum from the time of its payment to the present time.

" 8th.    The court instructs the jury that if they find from the evidence in this case that the plaintiff was indebted to the Equitable Trust Company, of Connecticut, on or near the last of April or first of May, 1881, in the sum of two hundred dollars interest money; and that on or near that time he called at the office of the defendant for the purpose of paying said interest; and that he found in said office the young Mr. Sanford, and that he then and there paid to the young Mr. Sanford the said interest money, and that young Mr. Sanford told the plaintiff that it would be all right, he would give it to his father, meaning the defendant in this case, and if you further believe from the evidence that said young Mr. Sanford, in the receipt of said money, was acting for and in favor of his father, the defendant, and that said interest money was not paid on said mortgage indebtedness by said E. Sanford, and that afterward the plaintiff, in order to procure the release of said mortgage, paid to the defendant two hundred and thirty dollars, being the May payment of interest due on said mortgage, together with interest upon interest, and that the plaintiff at the time he made such payment protested against making the same, then your verdict must be for the plaintiff for such sum of two hundred and thirty dollars with interest thereon at the rate of six per cent. from the time of its payment to present time."

The 7th instruction should have been so drawn as to require the jury to believe from a preponderance of the evidence that

the plaintiff paid to the son of the defendant the money, and that when it was paid, that the son had authority from the defendant as his agent to receive it for him. That if the jury so believe from the evidence, they should find for the plaintiff. The 8th instruction is also erroneous in ignoring the question of the son's authority to receive the money. For the errors herein indicated this judgment is reversed and cause remanded.

Reversed and remanded.