Miller & Graves, Defendants in Error, v. Vannie L. Pratz, Executrix, Plaintiff in Error.

Gen. No. 5,705.

1. PAYMENT—*presumption as to checks.* On hearing of a claim against a decedent's estate based on book account the executrix offered in rebuttal a number of checks, signed with decedent's name by a third person, drawn to the order of claimants, and by them indorsed, and paid and canceled by the bank. Of such checks, six had been credited by claimants on the account of decedent, and the others were claimed to have been applied by them on deals with the third person. *Held,* that the presumption is, if decedent, at the time of delivery of any of these checks, was indebted to claimants on his book account, that it was paid upon that debt until evidence shows that it was in fact paid upon the account of the third person or on some deal with him, or some other explanation appears in the testimony.

2. PAYMENT—*presumption as to checks.* Where one pays money or delivers a check for money to another, and there is no explanation of the cause of such payment, if business relations only exist between the parties the ordinary presumption is that the money was paid because it was due and owing.

3. PAYMENT—*presumption as to check larger than balance due.* Where a check has been delivered by one owing on account much less than the amount of such check, the presumption is that it was paid, in whole or in part, on some other account, and charging the excess against the payee is not authorized.

4. EVIDENCE—*of plaintiff competent as to books of account in suit against executrix.* In an action on a book account against an executrix, a member of the plaintiff partnership, who had kept the books, is competent to make the supplementary oath, authorizing the admission of the books in evidence.

5. EVIDENCE—*by parties competent in all cases as to admission of books of account.* A party to a suit may testify in all cases to the extent necessary to admit his books of account in evidence, but

where the adverse party sues or defends as executor, etc., he cannot become a witness at large as to transactions entered therein.

6. EVIDENCE—*by parties to suit for admitting books of account always competent.* Section 3 of the act entitled "Evidence," providing that any party may give the testimony necessary to admit books of account in evidence, is an independent provision, and has reference to neither of sections 1 and 2.

Error to the Circuit Court of Stark county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 12, 1913. Rehearing denied April 15, 1913.

EAGLETON & STONE and WRIGHT & WRIGHT, for plaintiff in error.

KERNS & FLING and JAMES H. RENNICK, for defendants in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Miller & Graves, partners and merchants, filed a claim against the estate of John E. Pratz, deceased, in the County Court of Stark county. On the first trial the jury disagreed and on the second trial found a verdict for claimants for $1.00 on which they had judgment. Each party appealed to the Circuit Court. The appeals were consolidated. The Circuit Court found it was a matter of accounting and ought to go to referees. The parties agreed on three referees, who took the testimony and reported the same and their conclusions. Each side filed exceptions and those of claimants were sustained and those of defendant were overruled and claimants had a judgment for $712.42, pursuant to the report of the referees. The executrix appealed to this court and filed an appeal bond, but that appeal should have been prosecuted to our April term, 1912, and the case now comes to us by writ of error.

The claim was based upon a book account and the books were kept by Graves, one of the claimants, and

he was permitted to make the supplementary oath authorizing the admission of the books in evidence. We sustain that ruling and hold it the natural conclusion to be drawn from the first three sections of the act in regard to Evidence. Section 1 provides that no person shall be disqualified as a witness in any civil suit, except as thereinafter stated, by reason of his interest in the event thereof. Section 2 provides that no party to a civil action shall be allowed to testify therein in his own behalf "by virtue of the foregoing section" when the adverse party sues or defends as executor, etc. Section 3 provides that where in any civil action the claim or defense is founded on a book account, any party may give the testimony necessary to admit the books. The meaning of section 2 is that section 1 shall not authorize the party to testify in his own behalf against an executor. Section 3 we regard as an independent provision, having no reference to either sections 1 or 2. We are of opinion that it was meant thereby to provide that in all cases a party may testify as therein stated to the extent necessary to admit his books in evidence. If it had been intended that such evidence could not be given to the books by an interested party where the adverse party acted in a representative capacity, then there was no need to adopt section 3 at all, or where section 2 said that the party could not testify "by virtue of the foregoing section" it should have read "by virtue of the foregoing or the succeeding sections." These views were expressed by this court in Alling v. Brazee, 27 Ill. App. 595. The Appellate Court for the First District so held in the majority opinion in McGlasson v. Housel, 127 Ill. App. 360.

After claimants had introduced their account books, showing an itemized account against Pratz, running from June 23, 1900, to April 1, 1909, the total debits of which were $8,011.89, with numerous credits from time to time, amounting to $7,279.47 and showing a balance

due of $732.42, defendant in rebuttal offered in evidence a large number of checks, drawn upon a banking house to the order of Miller & Graves and by them indorsed and paid and canceled by the bank.   Two of these checks were signed, ''J. E. Pratz.''   The rest of them were ''J. E. Pratz by Smith Owens.''   In rebuttal claimants were allowed to examine Graves at large as a witness, and he gave much evidence tending to show that many of those checks were paid to Miller & Graves by Smith Owens for merchandise which he obtained upon his own account for a large building which he was erecting and upon other dealings of his own.   This evidence was heard over repeated objections that he was incompetent to testify thereto under the statute.   The referees allowed the estate a credit for one check of December 5, 1900, for $20 signed by Pratz, and rejected all the other checks and allowed the account in the sum of $712.42.   Under section 2 of the statute above referred to, Graves was an incompetent witness as to the matters testified to by him in rebuttal, and we cannot consider his evidence.   The claimants contend that we must assume that the checks signed, ''J. E. Pratz by Smith Owens,'' were not the checks of Pratz but of Owens, and that they should not be credited upon this account in any event.   But, upon comparing the checks with the credits upon claimant's books, we find that claimants have given credit to Pratz on said account for five checks, signed as last above stated, and aggregating $2,250.91.   True, these credits read ''by cash'' instead of ''by check,'' but as the dates and amounts correspond it is entirely clear that these credits were given for those checks.   There is also a check for $290.90 dated January 6, 1902, and a corresponding credit on claimants' books on January 6, 1903, of which it is reasonably clear that the drawer of the check simply forgot that he had passed from 1902 to 1903.   This makes the total of checks signed ''J. E. Pratz by Smith Owens,'' for which

claimants have given Pratz credit $2,541.81. It is idle therefore to argue that none of the checks so signed were intended as payments on this account.

The first check offered in evidence was dated December 4, 1900, and the last one was dated July 24, 1906, and all the checks were within the time this account was running. Where one pays money or delivers a check for money to another and there is no explanation of the cause of such payment, and if business relations only exist between the parties, the ordinary presumption is that the money was paid because it was due and owing. Bromwell v. Estate of Bromwell, 139 Ill. 424; Chesnut v. Chesnut, 15 Ill. App. 390; Kinahan v. Butler, 133 Ill. App. 459. It follows that if at the time when any of these checks were drawn and delivered to claimants, J. E. Pratz was at that time indebted to the claimants upon this book account, the presumption is that it was paid upon that debt, unless some other explanation appears in the evidence. If however, it is shown that the check was in fact paid upon the account of Smith Owens, or to pay for merchandise delivered to him or upon some trade or deal with him, then it should not be credited upon this account. An example of this kind appears in the check of December 9, 1904, for $874.10, which the evidence strongly tends to show was paid for the benefit of Owens and not upon this account. If, at the time when any check was paid to claimants, it appears that Pratz was not then owing claimants or was owing much less than the amount of such check, this does not authorize a charge of the excess or of the check against claimants, but, in the absence of explanation, the presumption would be that it was paid on some other account in whole or in part. There are cases where, at the date of some of these checks, a credit was given for a lesser amount, but the cents exactly correspond, and this has a tendency to show that part of the check was applied on this account and duly credited and the rest was used for some other purpose. As we view

the law under the proofs now before us it would appear that the checks alone cannot be used further than to reduce or extinguish the book account of claimants, and that the checks alone will not authorize any presumption that claimants were indebted to the estate for any excess thereof over this account.

The judgment is therefore reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*